John A. KOLMAN, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant–Appellee.

No. 89–1675.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 19, 1990.

Decided Feb. 15, 1991.

John A. Kolman, Phoenix, Ariz., pro se.

Frederick J. Daley, Chicago, Ill., for plaintiff-appellant.

Stephen J. Liccione, Asst. U.S. Atty., Office of the U.S. Atty., Milwaukee, Wis., Michael C. Messer, Gary A. Sultz, Department of Health and Human Services, Region V, Office of the General Counsel, Chicago, Ill., for defendant-appellee.

Before POSNER, COFFEY, and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

John Kolman appeals from a decision by the district court upholding the denial of social security disability benefits to him. The administrative law judge of the Social Security Administration found that Kolman had a severe impairment. This finding required the judge to consider whether he

---

could do his past work. The judge found he could, and thus did not have to proceed to the next stage of the inquiry—whether there were a significant number of other jobs in the national economy that Kolman could perform despite his impairment. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.920; *Herr v. Sullivan*, 912 F.2d 178, 180 n. 1 (7th Cir.1990).

Kolman, a 34–year–old "loner," suffers from what psychiatry calls an "inadequate personality," implying a radical lack of interest in other people and manifested (in Kolman's case) in poor personal hygiene and offensive body odor, an obsessive and overly methodical approach to tasks, and an inability to handle even minimally stressful conditions. We have been unable to find any reference to "inadequate personality" in the psychiatric literature available to us, but as neither party questions the existence or severity of Kolman's impairment we shall not do so either. His work history is, as one might expect, erratic. Discharged from the Air Force after two months for "lack of motivation, immaturity, confusion, disorganization, and anxiety," he worked as a postal clerk for several years followed by intermittent stints as a security guard at industrial plants. He also spent several months as "an information security guide" in a county courthouse, a job that had been created under the auspices of CETA (Comprehensive Employment and Training Act of 1973, P.L. 93–203, 87 Stat. 839), a federal job-training program that is now defunct.

The administrative law judge thought that Kolman "could have been expected to return to his past work as a non-intervening security guard." It was on the basis of this finding that the judge denied the application for benefits. By "non-intervening security guard" the judge meant a security guard who would not be expected to confront an intruder, come to the aid of a person being attacked, or in short do anything to "intervene" in a dangerous situation that might erupt on his watch, beyond reporting it by walkie-talkie to the real security personnel. This was in fact the nature of Kolman's CETA job. And in describing his other jobs as a security guard, Kolman did not mention "intervention" as one of his duties. It seems to be conceded that his mental condition disables him from work that would require him to make split-second decisions under conditions of stress: in short, to "intervene."

If, then, the CETA job was past relevant work within the meaning of the applicable social security regulations, Kolman loses. For his mental condition does not preclude his working as a "non-intervening security guard," as the CETA job may accurately be described. We are inclined to agree with *DeRienzis v. Heckler*, 748 F.2d 352 (2d Cir.1984), however, that a makework training job is not the type of work to which the regulations refer. It is a temporary job designed to equip the employee for real work—not a career that a person disabled from pursuing a real career can be expected to pursue. But if this is wrong, it cannot help the government in a case such as this, where the training program no longer exists. It is true that the regulations explicitly require an inquiry into whether a significant number of jobs exist in the national economy only if the applicant cannot do his past work, and from this the government asks us to infer that the past work need not exist at all. The applicant might have been an ice cutter before the invention of the refrigerator. This particular example is ruled out by a requirement in the regulation that, for past work to count, the applicant must have done it within fifteen years preceding the application. But if the work disappeared within that time, the fact that he could perform it if it did exist does not appeal to us as being either a rational ground for denying benefits or one intended by the regulations. The failure of the regulation to require that the job constituting the applicant's past work exist in significant numbers probably just reflects an assumption that jobs that existed five or ten or even fifteen years ago still exist. But if the assumption is dramatically falsified in a particular case, the administrative law judge is required to move on to the next stage and inquire whether some other job that the applicant can perform exists in significant

numbers today somewhere in the national economy. A nonexistent makework training job is not past relevant work within the meaning of the regulations as we interpret them.

*Quang Van Han v. Bowen,* 882 F.2d 1453, 1457–58 (9th Cir.1989), looks the other way. The question was whether the work to which the statute and regulations refer includes employment abroad, and the court said "yes." The persuasiveness of the decision is weakened by its failure to discuss (or even cite) the *DeRienzis* case. But it is in any event distinguishable. The court thought that if the applicant's past work had been as taxing as equivalent work in the United States, then his ability to continue doing it showed he was not disabled; but the court left open the possibility that if he could show that his foreign work had been less taxing, he would be disabled notwithstanding his continued ability to perform it. The court may have believed that work in foreign countries generally is as or more taxing than work in the United States. Here, so far as appears, the minimally taxing nonintervening security guard's position was an artifact of a defunct federal welfare program and does not demonstrate that Kolman can fill any existing jobs in the economy.

The fact that Kolman's descriptions of his other jobs—bona fide security guard jobs that, unlike the CETA job, still exist in the national economy in significant numbers—do not mention intervention as being among his duties is not conclusive as to the requirements of those jobs. He may have omitted duties he could not perform. Or he may have lost those jobs and entered the CETA program because he was made anxious by the prospect that he might be called on to intervene in a dangerous situation. The Dictionary of Occupational Titles, on which the Social Security Administration relies to find out whether a job exists, does not contain "non-intervening security guard," or some synonym therefor, among its many thousands of listings, although its definition of "security guard" is broad enough to include such a position. U.S. Dept. of Labor, Dictionary of Occupational Titles 252 (4th ed. 1977) (title 372.-

667–034). The definition is "Guards industrial or commercial property against fire, theft, vandalism, and illegal entry, performing any combination of the following duties"—followed by a long list that includes a number of noninterventionist duties such as "report[ing] irregularities" and even "tend[ing] furnace or boiler." Whether this means that counterparts to Kolman's CETA job existed in the economy —existed, that is, as real rather than merely as makework jobs—and whether (the same point stated differently) Kolman's genuinely relevant past work, that is, his non-CETA security guard positions, required no intervention and hence were within his psychological ability are questions too dimly illuminated by the record to allow the denial of benefits to stand. The case must be remanded to the Social Security Administration for further proceedings consistent with this opinion.

VACATED WITH DIRECTIONS.