Carlos GARCIA, Plaintiff–Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.

No. 93–4252.

United States Court of Appeals, Sixth Circuit.

Submitted Nov. 18, 1994.

Decided Feb. 7, 1995.

---

Marcia W. Margolius (briefed), Brown & Margolius, Cleveland, OH, for plaintiff-appellant.

Suzanne Duman (briefed), Dept. of Health and Human Services, Office of the Gen. Counsel, Region V, Chicago, IL, and Marlon A. Primes, Office of the U.S. Atty., Cleveland, OH, for defendant-appellee.

Before: WELLFORD, RYAN, and BATCHELDER, Circuit Judges.

BATCHELDER, J., delivered the opinion of the court, in which RYAN, J., joined. WELLFORD, J. (pp. 559–60), delivered a separate concurring opinion.

BATCHELDER, Circuit Judge.

The appellant appeals the district court's decision affirming the denial of social security disability benefits and supplemental security income by the Secretary of Health and Human Services ("Secretary"). The central issue of this appeal is whether the Secretary, in determining a claimant's ability to perform past relevant work, may refuse to consider a claimant's inability to communicate in English. For the reasons stated below, we think the Secretary may do so. Therefore, we affirm.

## I.

Carlos Garcia, the appellant, is from Puerto Rico. His native language is Spanish, and his ability to speak and understand English is quite limited. From 1978 to 1980, Garcia worked as a car salesman in Puerto Rico. After moving to the United States in 1980, he worked as a welder and a laborer. Garcia has not worked since 1984, when the back pain he first experienced in 1983 allegedly became unbearable.

Garcia applied for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act ("Act"). For purposes of both DIB and SSI, the Act defines "disability" by, in part, providing that an individual

shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C.A. § 423(d)(2)(A) (West 1991); 42 U.S.C.A. § 1382c(a)(3)(B) (West Supp.1994).[1]

To aid in making disability determinations under the Act's definition, the Secretary has established a five-step sequential analysis.[2] Step four of the analysis denies benefits to a claimant whose impairment does not prevent him from performing the duties of his previous work. 20 C.F.R. §§ 404.1520(e), 416.920(e) (1994). In interpreting the disability definition, the Secretary has provided that vocational factors, such as education, will not be considered at step four. *Id.* §§ 404.1560(b), 416.960(b). The inability to communicate in English is an element of the vocational factor of education, *see id.* §§ 404.1564(b)(5), 416.964(b)(5), which the Secretary's sequential analysis reserves for step five. *Id.* §§ 404.1520(f)(1), 416.920(f)(1).

Garcia's applications for benefits were denied initially and upon reconsideration. After the hearing, the administrative law judge (ALJ) found that Garcia could perform light work and that his past work as a car salesman required no more than light work. Accordingly, the ALJ found Garcia "not disabled" at step four because he could perform

---

1. In the case of both DIB and SSI, the disability definition specifies other requirements, none of which is relevant here. *See* 42 U.S.C.A. §§ 423(d), 1382c(a). Also, wherever applicable, parallel citations for identical provisions in the subchapters on DIB and SSI will be provided in the opinion.

2. Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
   Step Two: If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.

Step Three: If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
   Step Four: If the claimant is able to perform his previous work, benefits are denied without further analysis.
   Step Five: If the claimant is able to perform other work in the national economy, in view of his age, education, and work experience, benefits are denied.
*See* 20 C.F.R. §§ 404.1520, 416.920 (1994).

his past work as a car salesman. The Appeals Council denied review, and the ALJ's opinion became the final decision of the Secretary. In affirming the Secretary's decision, the district court rejected Garcia's contention that his inability to communicate in English rendered him incapable of performing his past work as a car salesman.

On appeal, Garcia challenges the Secretary's determination that Garcia retains the residual functional capacity (RFC) for light work. Garcia also launches a two-pronged attack on the Secretary's decision to deny benefits despite Garcia's virtual inability to communicate in English.[3]

## II.

■ To begin, we address Garcia's challenge to the Secretary's determination that Garcia retains the RFC for light work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (1994) (providing definition of light work). If the record as a whole contains substantial evidence to support the Secretary's determination, we must affirm. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). "Substantial evidence" is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *Stanley v. Secretary of Health & Human Servs.,* 39 F.3d 115, 117 (6th Cir.1994).

In the last sentence of his reply brief, Garcia asserts his inability to perform light work, but marshals no arguments in support of that assertion. Nevertheless, we have reviewed the record, and we conclude that substantial evidence supports the Secretary's determination regarding Garcia's RFC for light work.

## III.

Next, we address Garcia's claim that the Secretary's refusal, at step four of the sequential analysis, to consider a claimant's inability to speak English is inconsistent with the language of the Act. In support, Garcia offers two arguments.

## A.

■ We construe the first of these two arguments as a direct challenge to the Secretary's regulation excluding the vocational factor of education (and thus the inability to communicate in English) from the assessment of a claimant's ability to perform past work. *See* 20 C.F.R. §§ 404.1560(b), 416.960(b).

■ Where a statute is unambiguous, no deference is due the Secretary; the regulation must follow the plain meaning of the statute. In the words of the Supreme Court, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *see also Good Samaritan Hosp. v. Shalala,* — U.S. —, —, 113 S.Ct. 2151, 2157 (1993); *Sullivan v. Everhart,* 494 U.S. 83, 88–89 (1990).

We think the Act speaks directly to the validity of the regulation excluding vocational factors from step four of the sequential analysis. Congress clearly intended the Secretary to consider education when determining whether the claimant can perform other substantial gainful work which exists in the national economy, but not when considering the claimant's ability to do his previous work. This intent is borne out by the structure of the disability definition. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(B). The phrase "considering his age, education, and work experience" interrupts and therefore exclusively modifies the phrase "but cannot ... engage in any other kind of substantial gainful work which exists in the national economy." *Id.* Accordingly, the phrase "consid-

---

**3.** Garcia admitted at the ALJ hearing that he had been in this country for 11 years. There is no discussion in the record as to why he is not more conversant in English.

ering his age, education, and work experience" does not modify the phrase "not only unable to do his previous work." The inevitable reading is that Congress intended a claimant's ability to perform previous work to be assessed apart from the considerations of age, education, and work experience. As the Secretary's regulation, found at 20 C.F.R. §§ 404.1560(b) and 416.960(b), mirrors the plain meaning of the disability definition, *see* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(B), the regulation will be upheld. *Martinez v. Bowen,* 685 F.Supp. 70, 71 (S.D.N.Y.1988) (holding that the Secretary's interpretation declining to consider vocational factors in step four is consistent with the statute).[4]

Although we need go no farther than the statutory language itself, we note that the legislative history supports our reading of the disability definition. In 1967, Congress amended the Act to contain the definition of disability now appearing in §§ 423(d)(2)(A) and 1382c(a)(3)(B). The Senate and House reports that accompanied the amendment explained the substance of the amendment in this way:

> The bill would provide that ... an individual would be disabled only if it is shown that he has a severe medically determinable physical or mental impairment or impairments; that if, despite his impairment or impairments, an individual still can do his previous work, he is not under a disability; and that if, considering the severi-

ty of his impairment together with his age, education, and experience, he has the ability to engage in some other type of substantial gainful work that exists in the national economy even though he can no longer do his previous work, he also is not under a disability....

S.Rep. No. 744, 90th Cong., 1st Sess. 48–49 (1967), *reprinted in* 1967 U.S.C.C.A.N. 2834, 2882; *see also* H.R.Rep. No. 544, 90th Cong., 1st Sess. 30 (1967). The separation of the phrases by semicolons in this legislative history confirms that, under the congressional scheme, considerations of age, education, and work experience have no bearing on the analysis of a claimant's ability to perform past work.

### B.

■ Essentially, Garcia's second argument is but a peripheral attack on the Secretary's decision not to consider English language skills at step four. However, on its face, Garcia's second argument challenges the Secretary's refusal to require that past work actually performed by a claimant be available in significant numbers in the national economy. As framed, this second argument implicates two social security rulings, both of which interpret the disability definition, *see* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(B), and the Secretary's sequential analysis, *see* 20 C.F.R. §§ 404.1520(e), 416.920(e).

Social Security Ruling 82–61 outlines the Secretary's framework for evaluation at step

---

4. *See also Bowen v. Yuckert,* 482 U.S. 137 (1987). *Yuckert* interpreted 42 U.S.C.A. § 423(d)(2)(A) and held that the Secretary need not consider vocational factors in determining whether a claimant's impairment is severe. Throughout the case, the plurality and the concurring and dissenting justices appear to concede in dicta that, by the plain language of § 423(d)(2)(A), vocational factors need not be considered where the claimant is capable of performing past work. *See, e.g., id.* at 175 (Blackmun, J., dissenting) (Congress "necessarily considered the vocational factors to be a critical part of a disability determination in cases where the insured worker cannot do his previous work.").

The Secretary cites *Williams v. Sullivan,* 970 F.2d 1178, 1187 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1294 (1993). However, the *Williams* court did not confront a challenge to the validity of the Secretary's regulation prohibit-

ing consideration of vocational factors at step four. Rather, the *Williams* court merely applied that regulation. In so doing, *Williams* holds that an earlier Third Circuit case, *Velazquez v. Heckler,* 802 F.2d 680 (3d Cir.1986), is no longer good precedent. *Velazquez* had reversed an ALJ's decision because the ALJ failed to consider vocational factors at step four. The basis for *Velazquez* was the Secretary's own regulation, which did not clearly state that vocational factors are irrelevant at step four. By the time *Williams* was decided, however, the Secretary had changed the regulations to clarify her intent that vocational factors receive no consideration at step four. *See* Acquiescence Ruling 87–5(3), 1987 WL 109187 (S.S.A. Nov. 9, 1987) (describing why *Velazquez* was wrongly decided). Thus, *Williams* is of no assistance in our decision today.

four: First, the Secretary will consider whether the claimant has the residual functional capacity to perform the functional demands and duties of a past job as actually performed by the claimant. SSR 82–61, 1975–82 Soc. Sec. Rep. Serv. 836, 1982 WL 31387 (S.S.A.); *see also* SSR 82–62, 1975–82 Soc. Sec. Rep. Serv. 809, 1982 WL 31386 (S.S.A.). If so, the claimant is not disabled. If not, the Secretary will consider whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82–61, 1982 WL 31387.[5] At no point does Ruling 82–61 require consideration of whether the job exists in significant numbers in the national economy.

Social Security Ruling 82–40 makes express what is implicit in Ruling 82–61: The Secretary will not consider whether past work as actually performed is currently available in significant numbers in the national economy or whether the past work was in this economy or a foreign one. Social Security Ruling 82–40 provides:

> The proper test in the fourth step of the sequential evaluation process is whether the individual can do his or her previous work, whether in the U.S. *or in a foreign economy.* ...
>
> ... If a claimant can meet the sitting, standing, walking, lifting, manipulative, intellectual, emotional and other physical and mental requirements of a past job, he or she is still functionally capable of performing that job regardless of the fact that the individual no longer resides in the country where the past work was performed.

SSR 82–40, 1975–82 Soc. Sec. Rep. Serv. 845, 1982 WL 31388, at *2 (S.S.A.) (emphasis added).

The combined effect of these rulings renders irrelevant the fact that actual past work was performed in an economy with a large non-English-speaking population and that such work may not be available in significant numbers in the United States for a non-English-speaking claimant. Garcia maintains that Social Security Rulings 82–61 (specifically, its first prong) and 82–40, upon which the district court relied, are inconsistent with the Act and that the ALJ erred in finding the claimant capable of performing his actual past work, despite the insignificant number of jobs in the United States for car salesmen who speak only Spanish.

█ Although social security rulings do not have the force or effect of law, we are persuaded that *Chevron* applies to social security rulings insofar as the rulings directly involve construction of the statute. *White v. Shalala*, 7 F.3d 296, 300 (2d Cir.1993) (applying *Chevron* to social security ruling); *Kennedy v. Shalala*, 995 F.2d 28, 30 & n. 3 (4th Cir.1993) (same). Thus, where the Secretary's interpretation conflicts with the plain language of the governing statute, we will not hesitate to overturn that interpretation. *See Andrade v. Secretary of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 346 n. 3 (9th Cir.1991). However, where the statutory language bears more than one interpretation, we will uphold the Secretary's interpretation if it is a permissible construction of the statute. *White*, 7 F.3d at 300; *Kennedy*, 995 F.2d at 30.

█ Where the Secretary interprets her own regulations, rather than a statute, substantial deference is in order. *Thomas Jefferson Univ. v. Shalala*, —— U.S. ——, ——, 114 S.Ct. 2381, 2386–87 (1994); *Udall v. Tallman*, 380 U.S. 1, 16 (1965); *Medical Rehabilitation Servs., P.C. v. Shalala*, 17 F.3d 828, 831 (6th Cir.1994). Accordingly, we will not overturn the Secretary's interpretation of her own regulations unless it is inconsistent with the plain language of the regulation or is

---

5. The Sixth Circuit has applied this construction in two cases: *Studaway v. Secretary of Health & Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987), and *McCallum v. Sullivan*, No. 89–2143, 1990 WL 126410, at *2 (6th Cir. Aug. 31, 1990).

*But see Carter v. Secretary of Health & Human Servs.*, 834 F.2d 97 (6th Cir.1987). None of these cases involved a challenge to the validity of the Secretary's construction.

plainly erroneous in light of the Secretary's intent at the time of the regulation's promulgation. *Thomas Jefferson Univ.*, —— U.S. at ——, 114 S.Ct. at 2386–87.

Garcia insists that the Secretary's interpretation is inconsistent with the language of the disability definition, which sets forth two requirements for a finding of disability: A claimant must be "unable to do his previous work" and unable to "engage in any other kind of substantial gainful work which exists in the national economy." *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(B). Garcia contends that the latter phrase, through its use of the word "other," describes the nature of "previous work." Thus, Garcia maintains, a plain reading of the statute reveals that "previous work," like "any other kind of substantial gainful activity," must "exist[ ] in the national economy." The Secretary's interpretation, embodied in Ruling 82–40 (and reflected in the first prong of Ruling 82–61), is that the phrase "which exists in the national economy" does not modify "previous work" and that existence of the previous work in the national economy therefore need not be considered at step four of the sequential analysis.

As Garcia points out in his brief, the United States Court of Appeals for the Ninth Circuit has opined that his is a reasonable interpretation of the statute. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir.1989). Garcia fails to point out, however, that the Ninth Circuit in *Quang Van Han* found the Secretary's interpretation to be reasonable too. *Id.* The court, therefore, deferred to the Secretary's interpretation as dictated by *Chevron*. *Id.*

The claimant cites several other cases for the proposition that a claimant cannot be denied benefits at step four where the previous work is not available in the national economy. *Kolman v. Sullivan*, 925 F.2d 212, 213 (7th Cir.1991), and *Rivera v. Sullivan*, 771 F.Supp. 1339, 1356–57 (S.D.N.Y.1991), do indeed stand for that proposition, but these cases are unpersuasive because they substitute the courts' interpretation for the Secre-

tary's reasonable interpretation of the statute, a result *Chevron* forbids. *Kolman*, 925 F.2d at 214 (rejecting Secretary's interpretation of the regulation because "[a] nonexistent makework training job is not past relevant work within the meaning of the regulations as *we* interpret them") (emphasis added); *Rivera*, 771 F.Supp. at 1356–57 (rejecting the Secretary's proffered interpretation of the regulation because it was not "the *most* reasonable") (emphasis added).

*Kolman*, *Rivera*, and another unpublished case cited by the claimant, *Patton v. Sullivan*, No. 88–C–7916, 1989 WL 134822 (N.D.Ill. Oct. 30, 1989), also hold that a claimant cannot be denied benefits at step four where the requirements of his prior work as actually performed were uniquely lenient, more lenient than the requirements of his prior work as generally performed throughout the economy. *Kolman*, 925 F.2d at 214; *Rivera*, 771 F.Supp. at 1356; *Patton*, 1989 WL 134822, at *1. This is also unpersuasive, because again the courts substitute their judgment for the reasonable judgment of the Secretary. It is generally reasonable (and consistent with the statute) to conclude that a person capable of performing work he performed before the impairment is not disabled as a matter of law and should be denied benefits.[6] Moreover, in this case, Garcia has not attempted to show that the requirements of being a car salesman in Puerto Rico were uniquely lenient compared to their counterparts in the continental United States, as opposed to being, simply, unique by virtue of the different tongue.

In short, we agree with the Ninth Circuit in *Quang Van Han*. The statutory language is ambiguous on this question, but easily bears the Secretary's interpretation. Furthermore, it is important to remember that a claimant with the capacity to perform work in the national economy will be denied benefits "regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C.A. §§ 423(d)(2)(A),

---

6. Whether this conclusion would be reasonable or consistent with the Act where the claimant shows that his prior work was less demanding than sedentary work, *see Quang Van Han*, 882 F.2d at 1457–58, is not before us today, and we express no opinion on the matter.

1382c(a)(3)(B). Legislative history makes clear that Congress intended to distinguish sharply between unemployment compensation and the disability benefits provided by the Act. *See* Rules for Adjudicating Disability Claims in Which Vocational Factors Must Be Considered, 43 Fed.Reg. 55,349, 55,350 (1978) (quoting Subcommittee on the Administration of the Social Security Laws, Preliminary Report to the Committee on Ways and Means (Mar. 11, 1960) (Comm. Print)). Congress manifested this intention by defining "disability" under the Act as a predominantly medical determination, as opposed to a vocational one. *Id.* (citing to H.R.Rep. No. 544, at 30). Nevertheless, to ensure the disability determination has practical meaning, Congress allowed some consideration of vocational factors, such as age, education, work experience, and the availability of jobs in the national economy. *Id.; see also* S.Rep. No. 744, at 48–49, *reprinted in* 1967 U.S.C.C.A.N. at 2882.

The sequential analysis contained in 20 C.F.R. §§ 404.1520 and 416.920 preserves this allocation: The determination of disability is predominantly a medical one, yet the Secretary assigns a role for vocational factors in the fifth and final stage. This accords with congressional policy regarding the distinction between unemployment compensation and disability benefits. On the contrary, to consider the presence of jobs in the national economy at step four as Garcia proposes would risk transforming a predominantly medical determination into one with practical availability of employment at its center and would thus undercut a fundamental policy of the Act.[7]

Finally, we observe that Garcia does not contend that the social security rulings are inconsistent with the regulations they interpret, and no inconsistency is apparent to us. Therefore, the social security rulings deserve substantial deference as the Secretary's interpretation of her own regulations. *See Thomas Jefferson Univ.,* —— U.S. at ——, 114 S.Ct. at 2386–87.

## IV.

For the foregoing reasons, we conclude that the Secretary's exclusion of vocational considerations from step four's determination of a claimant's ability to do past work, *see* 20 C.F.R. §§ 404.1560(b) and 416.960(b), is a permissible construction of the Act and is therefore entitled to deference. Similarly, we conclude that the Secretary's refusal to consider the availability of jobs in the national economy at step four, *see* Social Security Ruling 82–40, is a permissible construction of the Act and is therefore entitled to deference. It follows that the first prong of the framework set forth in Social Security Ruling 82–61 is permissible under the Act as well.

We further conclude that Social Security Ruling 82–40 and the first prong of Social Security Ruling 82–61 are not inconsistent with the regulations they interpret and are therefore entitled to substantial deference. The judgment of the district court in favor of the Secretary of Health and Human Services is **AFFIRMED.**

WELLFORD, Circuit Judge, concurring.

I fully concur in Judge Batchelder's opinion.

I write separately only to note that even if Garcia's inability to communicate effectively in English was properly considered at the *Step Five* level under 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1), it is still doubtful he could prevail. 20 C.F.R. § 404.1564, which deals with education as a factor under Step Five (vocational considerations), refers to "the ability to speak, read,

---

**7.** Even if we accepted Garcia's construction of the statute, that actual past work must be available in the national economy, we are not convinced Garcia could clear that hurdle. The claimant bears the burden of proving entitlement to disability benefits, including proof of inability to perform past work. *Preslar v. Secretary of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir.1994). Therefore, Garcia would bear the burden of proving that his actual past work does not exist in significant numbers in the national economy. The Secretary has construed "national economy" to include non-contiguous areas of the United States, such as Puerto Rico. *See* 43 Fed.Reg. 55,360–61 (1978). Garcia has presented no proof that jobs as a Spanish-speaking car salesman appear in insignificant numbers in the national economy, including Puerto Rico. Thus, Garcia would likely lose even under his proposed construction.

and understand English" and the relationship of these abilities to learning *"at school;"* thus, the Secretary considers proficiency in English an "educational factor." *Id.* §§ 404.1564(b)(5), 416.964(b)(5) (emphasis added). This process ignores, unfortunately, the learning of English at work, at church, during recreation, watching television, or in other contexts besides schooling. In this case, at the time of the ALJ hearing, Garcia had been in this country for eleven years. There is no explanation as to why he has not obtained an adequate "ability to speak, read and/or understand English." There may be jobs he could perform which require "an ability to understand and speak English at a 'marginal' level." *Duran v. Shalala,* No. 92–4092, 1994 WL 408186, at *4, *5 (C.D.Ill. Apr. 12, 1994) (affirming Secretary's finding that claimant, who had lived in this country for thirty years and who held four jobs requiring some ability to speak English, was not functionally disabled at Step Five "mere[ly] ... [because he] accepted the aid of an interpreter at the disability hearing"). A person with limited English speaking or reading ability may be compared to a functionally illiterate person, who may also be capable of working and not disabled under applicable Social Security regulations. *See Jurado v. Sullivan,* No. 89–2270–V, 1990 WL 57924, at *3 (D.Kan. Mar. 22, 1990).