**James E. PASS, Plaintiff–Appellant,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant–Appellee.**

No. 94–1883.

United States Court of Appeals, Fourth Circuit.

Argued March 10, 1995.

Decided Sept. 25, 1995.

**ARGUED:** H. Russell Vick, Greensboro, NC, for appellant. Malinda Caroline Hamann, Assistant Regional Counsel, Office of General Counsel, Department of Health & Human Services, Atlanta, GA, for appellee. **ON BRIEF:** Frank W. Hunger, Assistant Attorney General, Walter C. Holton, Jr., United States Attorney, Bruce R. Granger, Chief Counsel, Region IV, Mack A. Davis, Deputy Chief Counsel for Social Security Litigation and Programs, Mary Ann Sloan, Principal Regional Counsel, Social Security Disability Litigation, Haila Naomi Kleinman, Supervisory Assistant Regional Counsel, Office of General Counsel, Department of Health & Human Services, Atlanta, GA, for appellee.

Before MURNAGHAN, WILLIAMS, and MICHAEL, Circuit Judges.

Affirmed by published opinion, Judge MURNAGHAN wrote the opinion, in which Judge WILLIAMS and Judge MICHAEL joined.

## OPINION

MURNAGHAN, Circuit Judge:

The appellant, James Pass, was denied Supplemental Security Income disability benefits by the Secretary of the Department of

Health and Human Services,[1] based on a finding that he was capable of fulfilling the requirements of his former job position. On review of the Secretary's final decision, the district court affirmed the denial of benefits. Pass now appeals to this Court, arguing that because the particular job position that he previously held no longer exists, his claim for benefits should not have been denied based upon his ability to perform that work. For the reasons stated below, we affirm.

## I.

Pass applied for Supplemental Security Income on January 2, 1991, stating on his application that he had been unable to work since June 10, 1990 due to high blood pressure, heart trouble, an ulcerated stomach, and arthritis. The Social Security Administration denied Pass's application both initially and on reconsideration. Pass requested a hearing, which was held before an Administrative Law Judge ("ALJ") on January 28, 1992. The ALJ denied benefits to Pass on the basis that his impairments did not prevent him from performing the work in which he had engaged prior to June 1990.

The ALJ made detailed findings concerning Pass's claimed disability. The ALJ first acknowledged that Pass had not engaged in substantial gainful activity since June 10, 1990, and that he suffered from severe hypertension and arthritis. The ALJ discounted Pass's testimony concerning his other alleged ailments. After finding that Pass's hypertension and arthritis did not constitute or equal a listed impairment under the Social Security regulations, the ALJ proceeded to examine Pass's residual functional capacity and his employment history. Pass worked for a tobacco company on a seasonal basis in the early 1980s, and also farmed during that time. In 1989 and 1990, he grew tobacco as a sharecropper and maintained a vegetable garden. For five months in 1987, Pass worked full time as a gate guard at a construction site. His guard duties involved sit-

ting on a chair in a booth and monitoring people coming through the gate; there was no strenuous activity involved in the work. It took him approximately one week to learn how to perform the job. Pass's employment as a gate guard ended after five months, when the construction site at which he was working was completed.

Based on an assessment of Pass's physical and mental condition, the ALJ concluded that Pass retained the capacity for sedentary work and was able to perform his past work as a gate guard. The ALJ therefore found that Pass was not disabled and was not eligible for Supplemental Security Income benefits.

The Appeals Council denied Pass's request for review, establishing the ALJ's decision as the final decision of the Secretary. Pass then filed a complaint in the United States District Court for the Middle District of North Carolina pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Secretary's final decision. The magistrate judge to whom the case was referred issued a report recommending that the Secretary's decision denying benefits be affirmed. After Pass filed objections, the district court reviewed *de novo* the magistrate judge's determination. On May 17, 1994, the district court adopted the magistrate judge's recommendation and affirmed the decision of the Secretary. Pass appeals from the district court's decision.

## II.

█ We review the Secretary's denial of Supplemental Security Income benefits to determine whether the Secretary's decision is supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan,* 993 F.2d 31, 34 (4th Cir.1992) (per curiam).

---

1. On March 31, 1995, the Social Security Administration separated from the Department of Health and Human Services and became an independent agency pursuant to the Social Security Independence and Program Improvements Act, Pub.L. No. 103–296, 108 Stat. 1464 (1994).

As of that date, Shirley S. Chater, Commissioner of Social Security, was substituted for Donna E. Shalala, Secretary of Health and Human Services. Because all of the events relevant to the instant suit took place prior to the change, we refer to the Secretary throughout the opinion.

■ The Social Security Act, 42 U.S.C. § 301 *et seq.*, provides the following definition of "disability":

[I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ follows a sequential five-step process outlined in the Social Security regulations. *See* 20 C.F.R. § 416.920. If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps. *Hunter,* 993 F.2d at 35. The inquiry proceeds as follows:

(b) *If you are working.* If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.

(c) *You must have a severe impairment.* If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

(d) *When your impairment(s) meets or equals a listed impairment in appendix 1.* If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.

(e) *Your impairment(s) must prevent you from doing past relevant work.* If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

(f) *Your impairment(s) must prevent you from doing other work.* (1) If you cannot do any work you have done in the past because you have a severe impairment(s), we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work. If you cannot, we will find you disabled.

20 C.F.R. § 416.920. The applicant bears the burden of production and proof during the first four steps of the inquiry. *Hunter,* 993 F.2d at 35. If he or she is able to carry this burden through the fourth step, the burden shifts to the Secretary in the fifth step to show that other work is available in the national economy which the claimant could perform. *Id.*

■ The instant case involves step four in the sequential evaluation, 20 C.F.R. § 416.920(e), which addresses past relevant work. After considering the evidence of Pass's physical and mental condition, the ALJ determined that Pass "retain[ed] the residual functional capacity for sedentary work activity with limitations that he not be exposed to unprotected heights or dangerous machinery." The ALJ then examined Pass's employment history and concluded that the gate guard position previously held by Pass was sedentary, unskilled work which did not require the performance of activities that violated the foregoing limitations. The ALJ thus denied Pass's claim of disability at the fourth step of the sequential evaluation, based on the finding that Pass remained able to perform his past relevant work. Pass contends on appeal, however, that he is not able to perform his past work because the particular gate guard position that he formerly held no longer exists, and because he is unable to perform the job of gate guard as it is defined in the national economy. He argues that once he demonstrated that his past job no longer existed, the ALJ should have proceeded to the fifth step in the sequential evaluation, at which point the Secretary would have had the burden of proving the availability of other work in the national economy which Pass would be capable of

performing. We must decide whether the nonexistence of Pass's former position as a gate guard has any relevance to the determination at step four of the sequential evaluation that Pass is not disabled.[2]

■ Disability, as defined by the Social Security Act, involves a determination that a claimant is unable to perform substantial gainful activity *"by reason of* any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(A) (emphasis added). In other words, a finding of disability under the statute must be based upon a lack of physical or mental capabilities on the part of the claimant, not upon other factors which prevent the claimant from obtaining work. The Social Security regulations addressing past relevant work reflect the statute's focus on the functional capacity retained by the claimant. 20 C.F.R. § 416.960, entitled "When your vocational background will be considered," states the following regarding past relevant work:

> We will first compare your residual functional capacity with the physical and mental demands of the kind of work you have done in the past. If you still have the residual functional capacity to do your past relevant work, we will find that you can still do your past work, and we will determine that you are not disabled, *without considering your vocational factors of age, education, and work experience.*

20 C.F.R. § 416.960(b) (emphasis added). 20 C.F.R. § 416.920(e), which sets out step four in the sequential evaluation, further states that a claimant will be considered not disabled if he can "still do *th[e] kind of work"* which he did in the past. 20 C.F.R. § 416.920(e) (emphasis added).

■ Notably absent from both 20 C.F.R. § 416.960(b) and 20 C.F.R. § 416.920(e) is any mention of the continued existence of past work or the ability of the claimant to obtain such work. By referring to the claim-

ant's ability to perform a "kind" of work, § 416.920(e) concentrates on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it. Past relevant work in the regulatory scheme is a gauge by which to measure the physical and mental capabilities of an individual and the activities that he or she is able to perform, rather than a means by which to assure that the claimant can actually find employment. In addition, in Social Security Ruling ("SSR") 82–61,[3] entitled "Past Relevant Work—The Particular Job or the Occupation as Generally Performed," the Social Security Administration has stated:

> A basic program principle is that a claimant's impairment must be the primary reason for his or her inability to engage in substantial gainful work. This reflects the intent of Congress that there be a clear distinction between disability benefits and unemployment benefits. Congress has also expressed the intent that disability determinations be carried out in as realistic a manner as possible.

The Administration has thereby further emphasized that as it concerns past relevant work, the Social Security scheme focusses on a claimant's functional capacity, as opposed to his or her ability to obtain employment.

■ The fact that the regulations are concerned with the physical and mental abilities of a claimant, rather than the existence of jobs, at step four of the sequential evaluation becomes even clearer when one compares step four with step five. If a claimant shows that he or she cannot perform past work at step four, the ALJ must proceed to examine at step five whether the claimant is able to perform other work. Only at step five does the existence of job opportunities become relevant:

---

2. Pass does not contest the ALJ's finding concerning his ability to perform sedentary work, or the finding that his past job as a gate guard was performed at a sedentary level of exertion. He conceded at oral argument that if his former job as a gate guard were available, he would be able to perform it.

3. Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law. *Quang Van Han v. Bowen,* 882 F.2d 1453, 1457 (9th Cir.1989).

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work *which exists in the national economy,* regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (emphasis added). Inquiry into the existence of "work ... in the national economy" is therefore germane to "any other kind of substantial gainful work" under the statute, but is not to be considered with regard to "previous work."[4] *Cf. Smith v. Bowen,* 837 F.2d 635, 637 (4th Cir.1987) (per curiam) (stating that it is improper to rely upon the testimony of a vocational expert at step four to elaborate on a claimant's former job; the vocational expert's opinion becomes pertinent only after a finding has been made that the claimant cannot perform past relevant work).

 SSR 82–40, which outlines the approach of the Social Security Administration to the issue of past relevant work performed in a foreign country, provides further support for the conclusion that the existence of jobs is not a relevant consideration at step four of the sequential evaluation. SSR 82–40 contains the Administration's response to the argument that foreign work should not be considered past relevant work unless a claim-

ant could find substantially similar work in the United States. The Ruling states:

Such a view .... interposes a requirement that similar work must be found in the U.S. economy as a condition for determining a claimant able to do past relevant work performed in a foreign country. This elevates an element of the fifth step of the sequential evaluation process, availability of work in the national economy, to the fourth step which only deals with the claimant's ability to do his or her past work. The law does not qualify "previous work" but does specify that "other ... work" must exist in significant numbers in the national economy. The legislative history of the statutory provisions also does not qualify "previous work," but clearly indicates that the provisions were enacted to provide guidelines "to reemphasize the predominant importance of medical factors in the disability determination."

The policy statement of SSR 82–40 explains further:

An individual is found to be under a disability only if his or her physical or mental impairment(s) is the primary reason for inability to engage in substantial gainful work activity. Factors including change of residence from one geographical area to another, lack of job openings, and employers' hiring practices are not pertinent to the decision....

The relevance of past work in a foreign economy for purposes of regulations sections 404.1520(e) and 416.920(e) is no different from the relevance of past work in the U.S. economy with respect to the physical and mental demands of the particular past job. If a claimant can meet the sitting, standing, walking, lifting, manipulative, intellectual, emotional and other physical and mental requirements of a past job, he or she is still functionally capable of

---

4. It should be noted that even at step five of the inquiry, the regulations make irrelevant the claimant's actual ability to obtain work. While at step five, the Secretary must show that work exists in the national economy which the claimant could perform, the regulations state that "[i]t does not matter whether—(1) Work exists in the immediate area in which you live; (2) A specific job vacancy exists for you; or (3) You would be hired if you applied for work." 20 C.F.R.

§ 416.966(a). Commenting on the 1967 amendments to the Social Security Act, we have stated, "Under the amended Act, the courts are not to be concerned about the availability of jobs in the community or even their availability to one with the claimant's impairments, but only with the question of the claimant's ability to engage in gainful activity." *Whiten v. Finch,* 437 F.2d 73, 74 (4th Cir.1971) (per curiam).

performing that job regardless of the fact that the individual no longer resides in the country where the past work was performed. It is only after a claimant proves that he or she is not able to do his or her previous work that the burden shifts to the Secretary to show that there is work available in the U.S. national economy which the claimant can do (the fifth and last step of the sequential evaluation process).

The position of the Social Security Administration is clear as to past work performed in a foreign country: a claimant's ability to perform such work will be considered in making a finding at step four of the disability evaluation, although his actual ability to obtain such work will not. *See Garcia v. Secretary of Health & Human Servs.,* 46 F.3d 552, 557 (6th Cir.1995) (pointing out that SSR 82–40 simply "makes express what is implicit in Ruling 82–61: The Secretary will not consider whether past work as actually performed is currently available in significant numbers in the national economy...").[5]

Pass directs our attention to *Kolman v. Sullivan,* 925 F.2d 212 (7th Cir.1991), a case decided by the Seventh Circuit, as support for his position that the nonexistence of his past relevant work should prevent the Secretary from finding that he is not disabled based on his ability to perform that work. In *Kolman,* the Seventh Circuit vacated a finding that a claimant was not disabled because he had the ability to return to past relevant work as a non-intervening security guard, a position that he had held as part of a government training program. The court found that, because the security guard position was a "makework training job," or a "temporary job designed to equip the em-

ployee for real work—not a career that a person disabled from pursuing a real career can be expected to pursue," *id.* at 213, it did not constitute relevant past work. *See also DeRienzis v. Heckler,* 748 F.2d 352 (2d Cir.1984) (holding that further inquiry by the ALJ was needed into the issue of whether a position in a government training program could be considered substantial gainful activity). The court further stated that even if the training job could be considered past employment, the Secretary could not deny benefits on the basis of the claimant's ability to perform that particular job, because the government training program no longer existed. The Seventh Circuit decided that if the assumption at step four that past work continues to exist is "dramatically falsified in a particular case," *id.,* the ALJ should proceed to step five in the evaluation process.

The instant case cannot, however, be decided on the basis of *Kolman.* Pass acknowledges that his job as a gate guard was not makework and was not part of a training program that is now defunct. Further, we cannot say that the assumption that Pass's job still exists at the level at which he would be able to perform it is "dramatically falsified." Pass has simply asserted that the particular job that he held no longer exists, because construction was completed in the location at which he worked. We need not decide whether it would be necessary to proceed to step five in the sequential evaluation if Pass's were the case of a training job which has been eliminated; it is simply not such a case.[6]

We conclude from an examination of the Social Security statutory and regulatory

5. Both the Sixth Circuit and the Ninth Circuit have upheld the Secretary's interpretation of the Social Security Act embodied in SSR 82–40. *See Garcia,* 46 F.3d at 559 ("The determination of disability is predominantly a medical one, yet the Secretary assigns a role for vocational factors in the fifth and final stage.... [T]o consider the presence of jobs in the national economy at step four ... would risk transforming a predominantly medical determination into one with practical availability of employment at its center and would thus undercut a fundamental policy of the Act."); *Quang Van Han v. Bowen,* 882 F.2d 1453, 1457 (9th Cir.1989) ("Although the Act requires 'other' work to exist in the United States, it places no such limitation on 'previous' work; it is therefore reasonable to infer that the ability to

perform previous work renders a claimant ineligible for benefits whether or not that work exists in the United States.").

6. The Seventh Circuit itself found *Kolman* inapplicable in *Knight v. Chater,* 55 F.3d 309 (7th Cir.1995). In *Knight,* the ALJ found the claimant capable of performing sedentary work, and determined that she was not disabled because she could perform her past relevant work as a keypunch operator or clerk. Relying on *Kolman,* the claimant argued on appeal that she was unable to perform her past relevant work because computers had replaced keypunch machines, and keypunch work was therefore no longer available. The Seventh Circuit rejected the argument, stating that "Ms. Knight's former

scheme, as well as the relevant rulings issued by the Social Security Administration, that disability determinations at step four of the five-step inquiry under 20 C.F.R. § 416.920 must focus on the physical and mental capabilities of the claimant, rather than on the availability of employment. The question of whether past work continues to exist is therefore not relevant at step four of the disability inquiry under 20 C.F.R. § 416.920. Pass's allegation that his former position as a gate guard no longer exists does not draw into question the ALJ's finding that Pass was not disabled because he retained the functional capacity to perform his past relevant work.

█ In addition, we reject the argument that we must consider separately Pass's ability to perform the job of security guard or gate guard as it is generally performed in the national economy. Pass points out that the job of gate guard is classified in the Dictionary of Occupational Titles ("DOT") as a job involving a light level of exertion, which is beyond Pass's capacity. The job of security guard is identified likewise, and both the gate guard and the security guard positions require training periods of between one and three months. However, under the fourth step of the disability inquiry, a claimant will be found "not disabled" if he is capable of performing his past relevant work either as he performed it in the past *or* as it is generally required by employers in the national economy. SSR 82–61; *see also Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990) ("The two tests [in SSR 82–61] are clearly meant to be disjunctive. If the claimant is found to satisfy either test, then a finding of not disabled is appropriate."). There is no dispute that the gate guard position that Pass held was performed at a sedentary level of exertion, and Pass concedes that if his position still existed, he would be able to perform the job. Having found that Pass could perform his job as he did in the past, it is unnecessary to consult the DOT in order to determine whether Pass would be able to perform the position of gate guard as it currently exists in the national economy.

job as a keypunch operator-clerk was neither a temporary nor training job. Therefore, *Kolman*

## III.

The Social Security scheme outlines the manner in which former employment should be considered in making a disability determination. Pass, however, asks us to inquire, on a case by case basis, into the current relevance of specific jobs in individual cases. The regulations simply do not call for such an inquiry at the fourth step of the sequential disability evaluation. As the Sixth Circuit stated in *Garcia*, "Congress intended to distinguish sharply between unemployment compensation and the disability benefits provided by the Act. Congress manifested this intention by defining 'disability' under the Act as a predominantly medical determination, as opposed to a vocational one." *Garcia*, 46 F.3d at 559 (citations omitted). If the analysis of disability under the Social Security Act is to be changed, it is for Congress or the Social Security Administration, not the courts, to do so.

Accordingly, the judgment is

*AFFIRMED.*

does not apply here." *Id.* at 315.