**Ruthie A. COLLIER, Plaintiff–Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee,**

No. 02–6379.

United States Court of Appeals, Sixth Circuit.

Aug. 24, 2004.

Before GIBBONS and COOK, Circuit Judges; and OLIVER, District Judge.[*]

OLIVER, District Judge.

Plaintiff–Appellant Ruthie Collier ("Collier") appeals from the district court's decision affirming the Commissioner of Social Security's denial of disability benefits. Because there is substantial evidence to support the finding of the Administrative Law Judge ("ALJ") that Collier is not disabled, we affirm the decision of the district court.

## I. FACTS AND PROCEDURAL BACKGROUND

Collier alleges that she became disabled in January 1994, as a result of depression and nerves causing welts on her legs, back and head. Collier has no previous work experience and received education through the sixth grade. In February 1996, Collier began treatment with Dr. Brenda Baker ("Dr. Baker") for complaints of depression and crying spells. After being admitted to two mental health facilities in late February and March 1996, for severe depression and suicidal gestures, Collier was diagnosed with major depression with psychot-

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

ic features and generalized anxiety disorder, and later depressive disorder and mild mental retardation. Throughout the latter half of 1996, Collier was examined by a psychiatrist, who diagnosed her with "depressive disorder, not otherwise specified, by claimant's statements," and a psychologist, who concluded that Collier's test results were invalid because she was "obviously malingering on the intelligence test." In December 1996, Dr. Baker diagnosed Collier with moderate depression. Dr. Baker noted that Collier had a "good" ability to follow work rules, relate to co-workers, use judgment and interact with supervisors, and only a "fair" ability to deal with the public, deal with work stress, function independently and maintain concentration.

Collier filed her application for disability benefits on June 12, 1996. That application was initially denied and denied again on reconsideration by the ALJ on October 29, 1997, as he concluded that Collier was not disabled. After the Appeals Council denied Collier's request for review as well as her request for reopening, Collier filed this action in district court. In November 1999, the district court remanded the case pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration of Collier's mental condition. On remand, the Appeals Council vacated the ALJ's October 29, 1997 decision and remanded for further consideration.

In April 2000, Collier began treatment with a psychiatrist, Dr. Ashok Jain ("Dr. Jain"). Dr. Jain completed a prescription form for Collier, indicating that he was providing outpatient psychiatric care to Collier for her emotional problems. After assessing Collier's complaints of sleeplessness, nervousness, and hearing voices telling her to die, Dr. Jain concluded that Collier suffered from depressive symptomatology with psychotic features and ob-

served that Collier had significant psychomotor retardation and dysphoric mood. In August 2000, Dr. Jain noted some improvement in Collier's condition as a result of her medications. In January 2001, Dr. Jain concluded that Collier was "permanently disabled to hold any significant job" and found that Collier had fair to poor ability to make occupational adjustments.

On February 5, 2001, the ALJ held a hearing at which Collier, who was 36 years old at the time, testified and presented other evidence in support of her application. Dr. Suzann O'Koon ("Dr. O'Koon"), a medical expert and licensed psychologist, testified that based on her review of the record, Collier's condition had improved with medication, that she could deal with limited stress, and that despite her limited education, Collier could perform simple processes in a work-like setting. Dr. O'Koon also concluded that Collier was not mentally retarded because there were no indications of adaptive deficits.

A vocational expert also testified at the hearing and acknowledged that Collier had no past relevant work experience. Based on the ALJ's hypothetical question, the vocational expert testified that such a person could perform the jobs of bench assembly, kitchen worker, miscellaneous food prep worker, and vending machine attendant, and that there were a substantial number of positions in the national economy and the state in each of these job categories.

In a decision dated April 13, 2001, the ALJ concluded that Collier had borderline intellectual functioning, anxiety disorder, major depressive disorder with psychotic features, obesity and intermittent dermatitis/urticaria of the hands and feet. Although the ALJ concluded that these were severe impairments, he also found that these impairments did not meet or equal the impairments contained in 20 C.F.R. pt.

404, subpt. P, app. 1. The ALJ also found that Collier had the residual functional capacity ("RFC") for a restricted range of heavy work. In addition, he concluded that Collier required low-stress, entry level work with simple procedures, limited interaction with the general public, no problem-solving or independent planning, no fast-paced assembly lines or demanding quota, and no jobs requiring literacy. Based on the vocational expert's assessment, the ALJ found that there were a significant number of jobs Collier could perform and that she was not disabled. Collier sought review of this decision in the district court, which found that there was substantial evidence to support the denial of benefits.

In her appeal, Collier argues that the judgment of the district court should be reversed on the following grounds: (1) the ALJ neglected to complete a Psychiatric Review Technique form as required by the Social Security Rules and Regulations; (2) the ALJ, in finding she had a residual functional capacity for a restricted range of heavy work, failed to appropriately defer to the decision of the ALJ on her earlier application in 1992 that she had a residual functional capacity for light or sedentary work because the Commissioner was unable to produce the earlier claim file; and (3) the ALJ exhibited bias against her which deprived her of a fair and impartial hearing. For the reasons discussed below, none of these arguments has merit.

## II. ANALYSIS

### A. *Standard of Review*

Under 42 U.S.C. § 405(g), this court's review of the Commissioner's decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied. *See Garcia v. Sec'y HHS,* 46 F.3d 552, 555 (6th Cir.1995). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of HHS,* 25 F.3d 284, 286 (6th Cir.1994). In determining whether substantial evidence exists, the scope of this court's review is limited to an examination of the record only; the court is not to review the evidence *de novo,* make credibility determinations or weigh the evidence. *Id.; Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). The Commissioner's decision must be affirmed if it is supported by substantial evidence, even if a reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Smith v. Chater,* 99 F.3d 780, 781–82 (6th Cir. 1996).

A review of the ALJ's decision reveals that he extensively reviewed Collier's medical history in order to assess the severity of Collier's mental condition. First, the ALJ considered Collier's treatment in 1996, when she was experiencing suicidal tendencies, including her course of treatment with Dr. Baker. After noting that Collier's psychological testing revealed mild mental retardation, the ALJ recognized that Collier later reported a decrease in depression, had not been suicidal, and had reported better spirits and a happier mood. The ALJ took into account Collier's October 1996 consultation with a psychologist, who considered Collier's test results invalid because she "was obviously malingering on the intelligence test."

Next, the ALJ noted that Collier did not receive any counseling for the next four years, until 2000, when Collier began receiving treatment from Dr. Jain. Dr. Jain stated that Collier was nervous, lacked the ability to concentrate and felt worthless,

angry and irritable when she did not take her medications. The ALJ discussed the conflicting evidence on whether Collier had psychotic features, recognizing that one portion of Dr. Jain's notes indicates depressive symptomatology with psychotic features, while another portion states that Collier denied "any auditory, visual hallucinations or elusions." Finally, the ALJ accounted for the fact that in August 2000, Dr. Jain found that Collier's psychotic symptoms were dissolving with the use of her medications, and that there was steady improvement in September 2000.

Lastly, the ALJ also took into account the fact that Collier acknowledged caring for her four young children, was able to visit friends, and do shopping for the family. He also found that Collier's mental impairments had resulted in only mild restrictions of daily living and moderate difficulties in maintaining social function. Thus, the ALJ concluded that Collier suffered from borderline intellectual functioning, anxiety disorder, major depressive disorder with psychotic features, obesity and intermittent dermatitis/urticaria of the hands and feet, all of which were severe impairments.[1]

### B.  Psychiatric Review Technique Form

■  For her first argument, Collier contends that the ALJ failed to complete a Psychiatric Review Technique form. According to Collier, because the ALJ found that she suffered from major depressive disorder with psychotic features, the regulations required him to complete this form and append it to his denial decision.

While the Rules and Regulations of the Social Security Administration once required an ALJ to append a copy of the Psychiatric Review Technique form to his or her decision when evaluating mental impairments, this requirement was changed in August 2000. Under the current regulations, an ALJ is only required to discuss the criteria identified in 20 C.F.R. § 416.920a(b). See 65 Fed.Reg. 50,746 available at 2000 WL 1173632 at *50758 (concluding that "these final rules do not require administrative law judges or the Appeals Council to complete the [Psychiatric Review Technique] form or to attach the form to their decisions...."). In this case, the ALJ discussed these criteria in rendering his decision, a fact that Collier does not dispute. Thus, Collier's first argument lacks merit.

### C.  Consideration of Collier's 1992 Disability Application

■  Collier's second argument concerns an earlier application for benefits she made in July 1992 that was denied in May 1994. Collier maintains that the Commissioner's failure to produce this earlier case file prevented the ALJ from applying the principles articulated in Drummond v. Comm'r of Soc. Sec., 126 F.3d 837 (6th Cir.1997) as well as Acquiescence Ruling ("AR") 98–4(6).[2] In Drummond, this court held that, absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ. Id. at 842.

Although not entirely clear, Collier appears to argue that the current ALJ, who found that Collier's RFC was for heavy

---

**1.**  In her brief, Collier makes a passing reference to the fact that the ALJ failed to properly assess her education level when he concluded that Collier had a "marginal" education. As the district court noted, however, the ALJ's error on this issue was harmless inasmuch as his hypothetical question to the vocational expert was limited to jobs that did not require literacy.

**2.**  In AR 98–4(6), the Commissioner acknowledges its acquiescence in the Sixth Circuit's opinion in Drummond.

work, should have been bound by the ALJ's decision in 1994, who determined that Collier's RFC was for light or sedentary work. In response, the Commissioner first argues that neither the holding in *Drummond* nor AR 98–4(6) are applicable to this case because the Commissioner has been unable to locate the 1994 denial decision. According to the Commissioner, its operating manual provides that if a file is lost or has been destroyed and the prior ALJ decision cannot be obtained, the principles of *Drummond* have no application. Second, the Commissioner argues that even if this principle were applied, the ALJ's consideration of new evidence after the 1994 denial decision supported his conclusion that Collier was capable of heavy work.

The district court addressed Collier's concerns about the lost case file in its opinion, and found that a remand was not necessary. Specifically, the court stated:

The plaintiff's counsel indicates that he has been on a years-long quest to find a decision regarding Collier's prior benefits application. Even if Collier had previously been found to be limited to sedentary work, however, the medical evidence between 1996 and 2000 certainly shows minimal physical impairment and, hence, a potential basis to find "functional improvement." Accordingly, it would serve no practical purpose to remand the case merely to seek the earlier administrative decision.

Op. at 7, n. 1. Thus, the district court found that despite the first ALJ's determination, there was sufficient evidence in the record subsequent to the 1994 decision to conclude that Collier's physical impairment

level had improved. The district court reiterated this finding when it stated that "[t]he undersigned had previously found that the medical evidence did not support the existence of more than minimal physical restrictions, and the Court remains convinced that no physical limitations even as significant as those quoted in the most recent hypothetical question were warranted." Op. at 7.

In reaching his conclusion, the ALJ evaluated medical evidence obtained in 1996, 2000 and 2001, and determined that Collier was capable of heavy work. Based on this evidence, the ALJ concluded that Collier could lift up to 100 pounds occasionally, and up to 50 pounds frequently. He also noted that she had the ability to stand, walk and sit for six hours in an eight-hour day. Given that new medical evidence considered by the ALJ, there was substantial evidence to support an RFC for a restricted range of heavy work.[3]

## D. *ALJ Bias*

■ For her third and final argument, Collier contends that the ALJ's behavior during the February 5, 2001 hearing demonstrated a bias against her, and ultimately denied her the right to a full and fair hearing. In particular, Collier alleges that the ALJ inappropriately questioned her about her marijuana and cigarette use; about her daughter's pregnancy; and about her children's father and Collier's relationship with him.

In evaluating Collier's claim, this court must begin with the "presumption that policymakers with decisionmaking power exercise their power with honesty and in-

---

**3.** In her brief, Collier appears to argue that this court should review the Commissioner's denial of her motion to reopen her 1992 application. Although Collier's argument on this point is not entirely unclear, this court has held that a federal court has no jurisdic-

tion to review the Appeals Council's decision not to reopen a decision, absent a "colorable constitutional claim." *Cottrell v. Sullivan,* 987 F.2d 342, 345 (6th Cir.1992). Collier's brief does not raise any constitutional claims with respect to this issue.

tegrity." *Navistar Int'l. Transportation Corp. v. United States Environmental Protection Agency,* 941 F.2d 1339, 1360 (6th Cir.1991). "The burden of overcoming the presumption of impartiality 'rests on the party making the assertion [of bias],' and the presumption can be overcome only with convincing evidence that 'a risk of actual bias or prejudgment' is present." *Id.* (citing *Schweiker v. McClure,* 456 U.S. 188, 196, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982); *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)). Stated differently, "any alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Id.*

In *Wells v. Apfel,* 2000 WL 1562845, at *5 (6th Cir. Oct. 12, 2000), the plaintiff alleged bias on the part of an ALJ based on the ALJ's "unwarranted skepticism" toward the plaintiff as well as his improper behavior during the hearing, including his demeaning and discourteous manner towards the plaintiff and his counsel. This court rejected this argument, concluding that the ALJ's obvious frustration, emotional mannerisms and abruptness were insufficient to establish actual bias. *Id.*

Similarly, in this case, Collier has not carried her burden of establishing that the ALJ was biased. We agree with the assessment of the district court, which stated:

> The undersigned agrees with counsel that a few of the ALJ's questions were somewhat improvident, but does not find them to be evidence of sufficient bias to remand the case. An objective observer, listening to the hearing as a whole, would not have been convinced from the conduct of the hearing that the ALJ's fairness need be questioned. The entire hearing lasted an hour and forty minutes ... and involved questioning the

plaintiff on a wide variety of matters and eliciting helpful testimony relating to education, daily activities, income (relative to SSI), treatment history and symptoms.

Op. at 9, n. 2. While some of the comments made by the ALJ were both unnecessary and inappropriate, the court does not discern any basis on which to conclude that he was biased in a manner which affected the outcome of the hearing.

### III. CONCLUSION

For these reasons, the judgment of the district court is affirmed.