Charles R. ROBERTS, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. CV 98–N–0346–W.

United States District Court,
N.D. Alabama,
Western Division.

Nov. 30, 1998.

Pat Nelson, Robinson & Nelson, Jasper, AL, for Plaintiff.

G. Douglas Jones, Winfield J. Sinclair, U.S. Attorney's Office, Birmingham, AL, Elyse

Sharfman, Social Security Administration—Office of General Counsel, Atlanta, GA, for Defendant.

## MEMORANDUM OF OPINION

EDWIN L. NELSON, District Judge.

### I. Introduction.

The claimant, Charles R. Roberts ("Roberts"), appeals from the decision of the Commissioner of Social Security denying him social security disability insurance benefits. The case is now properly before this Court. *See* 42 U.S.C. § 405(g) (1998). The issues have been briefed by the parties, and are now ripe for decision. Upon due consideration, the decision of the Commissioner will be reversed and the cause remanded for further consideration. Because the result here turns entirely on a question of law, the court's recitation of the facts will be brief.

Mr. Roberts was almost fifty-nine years old at the time of his hearing. He had spent more than thirty years working for the City of Mountain Brook's Public Works Department, where he had worked his way up from laborer to Assistant Superintendent. As Assistant Superintendent he was responsible for going out in the field, walking around in the "hills and hollers," and supervising his crews. R. 54. Roberts also testified that, while it was not technically part of the job description, he sometimes helped out the workers, performing work that involved significant manual labor and heavy lifting. R. 53–54.

According to Roberts, the situation changed considerably as his health problems worsened. He claimed that for years he was physically incapable of doing significant work due to fatigue, shortness of breath, and heart problems. R. 42–43. He testified that he could only work a few hours a day, could not go out into the field to supervise employees as his job required, and spent his days sitting in the office working on the computer and answering the phone. He also missed numerous sick days. R. 40–41.

The City of Mountain Brook, in an admirable show of gratitude for Mr. Roberts' long service, tolerated this situation and allowed him to continue receiving his paycheck and to maintain his job title, despite the fact that he couldn't really perform his assigned duties job anymore. R. 38, 42. Mr. Roberts was in fact never terminated from his job. Ultimately, however, he concluded that it was time for him to move on and allow an employee who was willing and capable of doing the job to step in. He retired in 1993.

Upon examination of the evidence, the Administrative Law Judge ("ALJ") found Roberts to have "severe" impairments, including emphysema, congestive heart failure, depression and arthritis. (R. 17–18). However, the ALJ concluded that Mr. Roberts was capable of doing his past relevant work as assistant supervisor, and so was not disabled. (R. 18).

Critical to this court's analysis is a determination of which version of Roberts' job the ALJ found he was capable of performing. The ALJ relied heavily on a vocational expert's opinion that Roberts could do his past work. R. 17. The expert never opined that Roberts could do the real job of Assistant Supervisor, as he had done it before his health problems arose. Nor did the expert suggest that Roberts could perform a job managing physical laborers as that job is generally performed in the national economy. The expert concluded only that Roberts could do the Mountain Brook job "as described over the last ten years or so [, after Roberts health problems began,] at a *sedentary* level." R. 55. Therefore it appears that the ALJ, who leaned heavily on the expert's opinion, also found that Roberts could return to this type of work—in other words, to his previous position as an office-bound supervisor, relying on the charity of his employer.[1]

### II. Standard of Review.

 This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is

---

1. In any event, the court finds no evidence in the record to support a finding that Roberts could

fulfill a job as an active supervisor in the field.

substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Lamb v. Bowen,* 847 F.2d 698, 701 (11th Cir.1988). The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). However, this limited scope does not render affirmance automatic,

> for "despite [this] deferential standard for review of claims ... [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached." *Bridges v. Bowen,* 815 F.2d 622 (11th Cir.1987).

*Lamb,* 847 F.2d at 701. Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler,* 748 F.2d 629, 634 (11th Cir.1984).

**III. Discussion.**

The court finds ample evidence to support the ALJ's conclusion that Roberts could fill the position that the City of Mountain Brook *created* for him as an office-bound supervisor. However, the court holds that this finding was not, as a legal matter, sufficient to support the ALJ's conclusion that Roberts was not disabled.

The Social Security Act sets out two requirements to establish the disability of one claiming disability insurance benefits. The claimant's impairments must be so severe that he is "[ (1) ] not only unable to do his previous work but [ (2) ] cannot engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Under the Commissioner's sequential evaluation procedure, these inquiries are separated into two steps. A claimant must bear the burden of showing that he cannot perform his previous work. If he succeeds, the government must then show that the claimant can perform other jobs which exist in significant numbers in the national economy. *See* 20 C.F.R. § 416.920.

A fair amount of controversy has arisen about the meaning of § 423(d)(2)(A)'s language. The practical question involves whether prior employment at a specialized or unique job, one which is not readily available, counts for disability purposes, or whether instead the job must be of a type in which the claimant could reliably find openings and return to work. Linguistically, the question is whether the phrase "exists in the national economy" modifies only "other ... substantial gainful work," or whether instead § 423(d)(2)(A) seeks to compare "previous work" "which exists in the national economy" with "other kind[s]" of work which meet this same test. *See* 42 U.S.C. § 423(d)(2)(A); *see, e.g., Quang Van Han v. Bowen,* 882 F.2d 1453 (9th Cir.1989) (discussing both arguments).

The Commissioner has weighed in with rulings attempting to clarify the issue. One ruling establishes as a general matter that a claimant can perform previous work, and so is not disabled, if he can perform *either* 1) the actual demands of a particular past relevant job *or* 2) the functional demands of this type of job as generally performed in the national economy. S.S.R. 82–61 (S.S.A.1982), *available in* 1982 WL 31287. This formulation of course implies that the particular past relevant job need *not* exist in significant numbers in the national economy.

The Commissioner has made this point even clearer in a ruling involving the relevance of past work in a foreign country, concluding in Social Security Ruling 82–40 that a claimant is not disabled if he "can meet the sitting, standing, walking, lifting, manipulative, intellectual, emotional, and other physical and mental requirements of a past job" held in a foreign country even if the claimant now resides in the United States and that job does not exist in this country. S.S.R. 82–40 (S.S.A.1982), *available in* 1982 WL 31388. "Ruling 82–40 makes express what is implicit in Ruling 82–61: The Secretary will not consider whether past work as actually performed is currently available in significant numbers in the national economy...." *Garcia v. Secretary of Health and Human Servs.,* 46 F.3d 552, 557 (6th Cir.1995).

The court assumes, without deciding, that it is bound to defer to the Commissioner's interpretation of the previous work require-

ment of § 423(d)(2)(A). *See Garcia*, 46 F.3d at 557 (deferring to the Commissioner's interpretation); *Quang Van Han*, 882 F.2d at 1457 (same); *see also Fair v. Shalala*, 37 F.3d 1466 (11th Cir.1994) (applying *Chevron* deference to the Commissioner's interpretation of a different provision of the Social Security Act). However, the court concludes there are limits to the types of jobs which should count as previous work even under the Commissioner's interpretation of the Act.

To understand these limitations, it is necessary to explore in more detail the underpinnings of the government's interpretation of § 423(d)(2)(A). This interpretation appears to be grounded on a particular understanding of the function served by the previous work requirement of the Social Security Act. Proponents of a claimant-friendly reading of the previous work test have argued that it "reflects an assumption that jobs that existed five or ten or even fifteen years ago still exist." *Kolman v. Sullivan*, 925 F.2d 212, 213 (7th Cir.1991) (Posner, J.). In other words, it is based on a guess that the claimant could go back to work at the same job today if he wanted to. This interpretation places the focus on job availability.

The Commissioner has rejected this understanding completely. According to Ruling 82–61, "A basic program principle is that a claimant's impairment must be the primary reason for his or her inability to engage in substantial gainful work." S.S.R. 82–61, 1982 WL 31387 at *1. Thus factors including a "change of residence from one geographical area to another, lack of job openings, and employers' hiring practices are not pertinent to the decision." S.S.R. 82–42, 1982 WL 31388 at *2. "This reflects the intent of Congress that there be a clear distinction between disability benefits and unemployment benefits." S.S.R. 82–61, 1982 WL 31387 at *1. Boiled down to its essence, the Commissioner's point appears to be that actual ability to get a job is irrelevant to the previous work determination, a position totally inconsistent with the understanding expressed by *Kolman* and other advocates of a claimant-friendly standard.

Under the Commissioner's logic, the key inquiry is whether the claimant was forced out of his previous employment because of his impairments, or stopped working at that job for some other reason. " 'Medical factors,' " not job availability, must assume " 'predominant importance' " in the assessment. S.S.R. 82–42, 1982 WL 31388 at *2. As the Ninth Circuit explained, "If the claimant is in sufficient physical and mental condition to perform his former work, his impairment is clearly not so severe as to preclude employment." *Quang Van Han*, 882 F.2d at 1457. "Past relevant work in the regulatory scheme is a gauge by which to measure the physical and mental capabilities of an individual and the activities that he or she is able to perform, rather than a means by which to assure that the claimant can actually find employment." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir.1995). For this reason, the actual availability of the job is not important. The focus is on the physical and mental ability to do a job, *any* job.

What happens, however, if the job the plaintiff held previously was not a real job at all? This could happen because the job was in effect a subsidy, *see, e.g., Kolman*, 925 F.2d at 213 (job was a make-work training job created under a federal aid program), or for any of a number of other reasons. Regardless of the reason, some people are paid for jobs that require little or no effort, and which no rational employer, operating in a competitive circumstance, would ever create. The fact that a claimant could hold down such a job, perhaps created precisely so an extremely impaired individual could fill it, would reveal nothing about the claimant's "physical and mental capabilities" to do actual work. Thus even under the Commissioner's understanding of previous work, with its focus on capability rather than actual job availability, past work of this type would not suggest that the claimant was not disabled. It therefore should not be considered as previous work within the meaning of § 423(d)(2)(A).

The language of the statute, and the Commissioner's own regulations, support just such an interpretation. § 423(d)(2)(A) establishes that a claimant is not disabled if he can "do his previous work ... [or] any other kind of substantial gainful work which exists in

the national economy." As we have already seen, the Commissioner has rejected a reading of this clause which would apply "exists in the national economy" to modify "previous work." Perhaps this is a reasonable interpretation, entitled to deference. However, the language does demand that the "previous work" be a "kind of substantial gainful work." Otherwise, there would be no "other" kind for the second phrase to refer to.

This interpretation also makes sense in light of the Act's basic standard for disability. The Act defines disability as inability to engage in substantial gainful activity. 42 U.S.C. § 423(d). Section 423(d)(2)(A) does not stand alone, but instead contains provisions designed to elaborate and implement this basic standard. The previous work test is thus designed to indicate whether a claimant is able to engage in substantial and gainful activity, and so is not disabled within the Act's definition. Of course, the ability to do previous work would not establish that the claimant was not disabled under this standard unless that previous work was itself substantial and gainful. Read in this context, "previous work" must clearly mean previous substantial and gainful work. The Commissioner has never suggested otherwise.

Thus a claimant's past relevant work must be tested to ensure at least that it is substantial, gainful activity before his ability to do this work will sustain a finding that he is not disabled. This means, in essence, that the work done must be real work for profit. "[T]he term 'substantial gainful activity' means the performance of substantial services with reasonable regularity in some competitive environment." *DeRienzis v. Heckler*, 748 F.2d 352, 353 (2d Cir.1984). As the Commissioner's regulations point out, the mere fact that a job exists and the claimant is paid for doing it does *not* establish that the work is substantial and profitable. Where the work is "done under special conditions" or in a "sheltered or special environment" the ALJ must look beyond the job's title or salary to determine how much the claimant is really doing, "how much [his] work is worth." 20 C.F.R. § 404.1574(a)(2)–(3).

In this case, the ALJ made no attempt to do this. As best the court can tell, the ALJ simply accepted the vocational expert's opinion that Roberts could do the job as he had done it since he became ill and unable to perform the regular duties of the job, without asking whether this was really a job involving substantial, gainful activity anymore. Roberts' testimony certainly suggested strongly that it was not. Thus the court holds that the ALJ erred as a matter of law by failing to determine whether Roberts' past employment was sufficiently productive and valuable to qualify as previous work under the Act.

Even if the ALJ had made such an analysis, the court is of the opinion that he could not have reasonably concluded, based on substantial evidence of record, that the job Roberts held during his declining years was anything more than fictional. If Roberts' testimony about his work schedule and duties was even close to the truth, it is clear that it wasn't. Roberts' testimony, the only evidence in the record on the point, established that the job Roberts held was a de facto part of his retirement, a reward from the city for loyal service, not a real paying position. He wandered in and out of work, and could do very little when he was there. Nothing in the record contradicts his statements, and neither the ALJ nor this court has identified any problems or inconsistencies in Roberts' testimony. Thus the court holds that the ALJ could not have properly concluded that this job constituted substantial, gainful activity as required under the act.

Roberts' ability to perform this job, the keystone of the ALJ's opinion, was thus meaningless in assessing his disability status. The ALJ was required to continue past this prong of the analysis, and determine whether Roberts could do a job which actually exists in the national economy before determining his disability status.[2] He did not. This action will therefore be reversed and remanded to allow the ALJ to consider these issues, applying the proper legal standards.

2. This could be either the same type of job, S.S.R. 82–61, or a completely different type.

### IV. Conclusion.

The ALJ's decision denying supplemental security income benefits under the Social Security Act was based on incorrect legal standards and was not supported by substantial evidence. Accordingly, the decision of the Commissioner will be reversed and the cause remanded. The Court will enter an appropriate order in conformity with this opinion.

### ORDER

In accord with the memorandum of opinion entered contemporaneously herewith, the decision of the Commissioner denying the plaintiff supplemental security income benefits is hereby **REVERSED** and the cause **REMANDED.**