Larry LUSK, Plaintiff–Appellant,

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.**

No. 02–5879.

United States Court of Appeals, Sixth Circuit.

Aug. 6, 2004.

406

Wolodymyr Cybriwsky, Law Offices of Wolodymyr Cybriwsky, Prestonsburg, KY, Dodd D. Dixon, Dixon & Juett, Winchester, KY, for Plaintiff–Appellant.

John S. Osborn, III, Asst. U.S. Attorney, Lexington, KY, Elyse Sharfman, Michael S. Feinstein, Dennis R. Williams, Mary Ann Sloan, Brian Seinberg, Atlanta, GA, for Defendant–Appellee.

Before GIBBONS and COOK, Circuit Judges; and OLIVER, District Judge.*

* The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

OLIVER, District Judge.

Plaintiff–Appellant Larry Lusk appeals from the district court's decision affirming the denial of his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Lusk filed his DIB application on March 31, 1998, and his SSI application on April 8, 1998, alleging that he became unable to work on March 19, 1998. Lusk initially claimed that his inability to work was due to multiple heart surgeries and diabetes. He has since alleged that his disability is also based on the amputation of his middle finger from his left hand, hypothyroidism, bypass surgery reactive depression, interstitial pulmonary fibrosis with chronic bronchitis, hypertension, obesity, gout, and deafness in his left ear. On August 18, 1998, Lusk's applications were denied. An Administrative Law Judge ("ALJ") conducted a hearing on Lusk's applications on July 29, 1999. The ALJ issued his finding on October 29, 1999, concluding that Lusk was ineligible to receive benefits. He concluded that, while Lusk could not perform his past relevant work, he could perform alternate jobs that exist in significant numbers in the national economy. In reaching this conclusion, the ALJ relied in part on the findings of Lusk's treating physician, Dr. Brian Andreas. The district court affirmed, holding that there is substantial evidence that Lusk was not disabled by his impairments. For the reasons stated hereafter, we affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

Lusk was forty-nine years old at the time of the hearing decision. He completed the eleventh grade and received vocational training in cosmetology in 1984. He has worked as a warehouse supervisor and construction worker as well as a cosmetol-ogist in a hair salon. He was a greeter at Wal–Mart between June and September 1999, but left that job because he could no longer perform it. The ALJ found his Wal–Mart experience to be an unsuccessful job attempt.

Lusk began experiencing chest discomfort in January 1998. Lusk's treating physician, Dr. Andreas, referred Lusk to a cardiology specialist, Dr. Jamie Jacobs, who saw Lusk on March 10, 1998. After Lusk discussed his symptoms with Dr. Jacobs, Dr. Jacobs reported that a review of Lusk's systems was essentially negative. Dr. Jacobs also reviewed the results of Lusk's January 1998 exercise test, which had not provoked chest discomfort. Further testing was recommended.

On March 19, 1998, Lusk underwent a heart catheterization, performed by Dr. Jonathan Waltman. Dr. Waltman determined that Lusk had coronary artery disease and needed coronary artery bypass grafting. This procedure was performed the following day.

In May of 1998, Lusk was experiencing only brief episodes of burning chest pain and was free of breathing problems on exertion. Dr. Waltman reexamined him in September after Lusk complained of diminished functional capacity and continued chest pain. Lusk's Cardiolite study showed normal results. Dr. Waltman concluded that Lusk exhibited no evidence of ongoing ischemia or symptoms from his ventricular dysfunction. He noted that Lusk had post-bypass surgery reactive depression and recommended that Lusk resume employment, stating that he believed doing so would help the depression. In noting that Lusk was thinking about obtaining short-term disability instead, Dr. Waltman specified that getting disability benefits would be a mistake and that Lusk would be better off returning to work. He did not impose any functional limitations.

During this same period, Lusk continued to see Dr. Andreas. In May and August 1998, Dr. Andreas wrote two letters to the Division of Disability Determination indicating that Lusk could not return to either physical labor or his previous employment. He suggested that Lusk could possibly return to sedentary work, such as clerical or desk work. In January 1999, Dr. Andreas completed a functional capacity assessment of Lusk. Dr. Andreas opined that Lusk could lift up to fifty pounds occasionally and twenty pounds frequently; stand up to four hours in an eight-hour day and up to one hour without interruption; sit up to eight hours a day and up to four hours without interruption; and stoop and crouch occasionally, but could not climb, balance, kneel, or crawl. He opined that Lusk had a limited ability to handle objects because of his amputated finger and had a limited hearing ability due to hearing loss in his left ear. Dr. Andreas limited Lusk to no work at heights and temperature extremes. He further concluded that Lusk had some mental limitations, including a fair ability to relate to co-workers, to deal with the public, to interact with supervisors, and to deal with work stresses.

The Division of Disability Determinations also requested that Lusk visit Dr. Karen Lenhoff to determine if any psychological factors would interfere with Lusk's ability to work. After meeting with Lusk in November 1998, she noted that his grooming and hygiene were appropriate, as were his clothes. He was clean and appeared alert and fully oriented. Based on her examination of Lusk, Dr. Lenhoff concluded that he was experiencing some depression, which she concluded was a depressive episode due to his medical problems. She found that Lusk performed adequately on most mental tasks and that he could understand and implement complex instructions. She found that his stress tolerance was "somewhat weak," and that while he exhibited adequate social skills, he "may find it uncomfortable to be forced to interact with others, although such interactions may eventually help to reduce depressive symptoms." She noted that his capacity to sustain attention to simple, repetitive tasks was fair but that he was able to follow simple instructions during the evaluation.

At the July 29, 1999 hearing before the ALJ, Lusk, who was represented by counsel, testified on his own behalf. Dr. Ralph Crystal also testified as a vocational expert ("VE"). The ALJ first asked the VE to consider an individual of Lusk's age, education, and work experience who could perform the exertional demands of light work with a sit/stand option. The ALJ also asked the VE to consider that the individual:

(1) could stand up to four hours per day, but no prolonged standing or walking in excess of one hour without interruption;

(2) is precluded from climbing, balancing, working at heights, and working with hands above shoulder level;

(3) must work in environments with limited exposure to dust, gases, fumes, temperature extremes, or excess humidity; and

(4) has limited fine motor manipulation with his right hand.

The VE testified that, while Lusk could not perform any of his former jobs, 1,900,000 cashier jobs and 1,600,000 clerical worker jobs existed in the national economy that Lusk could perform. The ALJ then asked the VE to consider the limitations set forth in the January 1999 opinion of Dr. Andreas. The VE testified that these exertional and nonexertional limitations would eliminate approximately half of the number of jobs that he previously gave. In a third hypothetical, the ALJ

asked the VE to consider Lusk's testimony concerning his symptoms.[1] After considering this hypothetical, the VE determined that Lusk could not perform the jobs identified.

The ALJ found that from March 19, 1998 through October 29, 1999, Lusk had "severe" impairments, including amputation of the middle finger on his left hand; coronary artery disease status post coronary artery bypass grafting; noninsulin dependent diabetes mellitus; hypothyroidism; depression secondary to coronary problems; and a history of alcoholism in remission. The ALJ further found that Lusk did not have an impairment or combination of impairments listed in, or medically equal to one listed in, 20 C.F.R., pt. 404, subpt. P, app. 1. In considering Lusk's impairments, the ALJ determined that Lusk had the residual functional capacity to perform a limited range of light work. Based on the VE's testimony, the ALJ concluded that, while Lusk could not perform his past relevant work, he could perform alternate jobs that exist in the national economy in significant numbers. The ALJ also "carefully considered [Lusk's] . . . subjective complaints of pain . . . but [found] . . . [his] allegations not credible to the extent he is precluded from performing the limited range of light work described." He concluded that Lusk was not disabled pursuant to 20 C.F.R. §§ 404.1520(f), 416.920(f).

The district court affirmed. In doing so, the court found that the ALJ's hypotheticals to the VE accurately portrayed Lusk's limitations. She also noted that the ALJ was not required to consider the VE's response to the hypothetical incorporating Lusk's testimony concerning his symptoms because an ALJ need not consider a VE's answer to a hypothetical that he later determines is not supported by the evidence. The district court concluded that despite Lusk's coronary problems, he did not demonstrate how the various clinical findings meet or equal any of the requirements for impairments listed in Part 404. Ultimately, the court found that substantial evidence supports the Commissioner's decision.

## II. ANALYSIS

### A. *Issues On Appeal*

Lusk raises four issues on appeal. First, he contends that there is not substantial evidence in the record to support the ALJ's assessment of his non-exertional limitations. Second, he claims that there is not substantial evidence to support the ALJ's conclusion that Lusk's coronary problems do not meet or equal Listing 4.04, "Ischemic Heart Disease," in Part 404. Third, Lusk asserts that the ALJ did not properly take account of his reactive depression. Finally, he maintains that the ALJ did not give complete deference to the assessment of his treating physician and other medical records documenting his coronary and other impairments. As discussed below, none of these arguments has merit.

### B. *Standard of Review*

Under 42 U.S.C. § 405(g), this court's review of the Commissioner's decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied. *See Garcia v. Sec'y of HHS,* 46 F.3d 552, 555 (6th Cir.1995). Substan-

---

1. At the hearing, Lusk testified that: he experiences chest pain almost every night; he has shortness of breath when he goes up and down stairs; he is deaf in his left ear and nearsighted; and cold weather exacerbates his chest pain. Lusk also testified about his diabetes and his depression.

tial evidence is "more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of HHS,* 25 F.3d 284, 286 (6th Cir.1994). In determining whether substantial evidence exists, the scope of this court's review is limited to an examination of the record only; the court is not to review the evidence *de novo,* make credibility determinations or weigh the evidence. *Id.; Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). The Commissioner's decision must be affirmed if it is supported by substantial evidence, even if a reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Smith v. Chater,* 99 F.3d 780, 781–82 (6th Cir.1996).

### C. *Establishing a Disability*

In order to receive requested benefits, a claimant must establish that he is disabled. The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). One is under a disability "only if his physical or mental impairment[s] are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

A five-part sequential analysis is used to evaluate disability claims, which includes the following inquiries: (1) Is the claimant presently employed? If so, the claim is disallowed; if not, the inquiry proceeds to step two; (2) Is the claimant's impairment "severe?" If not, the claim is disallowed; if so, the inquiry proceeds to step 3; (3) Does the impairment meet or exceed one of a list of specific impairments? If so, the claimant is automatically disabled; if not, the inquiry moves to step four; (4) Is the claimant able to perform his or her past relevant work experience? If so, the claim is denied, and if not, the inquiry moves to step five; (5) Is the claimant able to perform any other work in the national economy? If so, the claim is denied, and if not, the claimant is allowed disability benefits. *See* 20 C.F.R. §§ 404.1520(b)-(f)(1); 416.920(b)-(f)(1) (1997). The burden is on the claimant for the first four steps and shifts to the Commissioner in the last step. *Id.*

### D. *Lusk's Non–Exertional Limitations*

■ Lusk first argues that the ALJ's determination is not supported by substantial evidence because he did not find any nonexertional limitations. He asserts that the ALJ did not properly take account of his diabetes and a number of other impairments, including interstitial pulmonary fibrosis, hypertension, obesity, surgery reactive depression, gout and deafness. This contention is without merit.

A nonexertional limitation is one that affects a claimant's ability to meet the demands of a job other than strength demands. 20 C.F.R. §§ 404.1569a(c). The ALJ included in his decision and his hypothetical to the VE a number of nonexertional limitations on Lusk's functional capacity. Specifically, he included those found by Dr. Andreas in his January 1999 assessment. Dr. Andreas addressed Lusk's interstitial pulmonary fibrosis, obesity, and hearing loss in his assessment and determined that his limitations would include a limitation on his ability to engage in fine manipulation with his left hand, one

that required him to perform only low stress work without significant interaction with the public, one that precluded any work activity involving climbing or balancing or requiring acute vision or hearing, and one that limited his exposure to dust, gases, fumes, temperature extremes, and excess humidity. Even considering these limitations, the VE concluded that Lusk could perform more than one million cashier and clerical worker jobs.

The ALJ has the power and the discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *Elkins v. Sec'y of HHS*, 658 F.2d 437, 439 (6th Cir.1981) (noting that the court "may not abrogate the [Commissioner's] functions to evaluate and resolve conflicting medical testimony"). Moreover, this court has held that in determining a claimant's limitations, the medical opinions and diagnoses of a treating physician are entitled to great weight. *Cohen v. Sec'y of HHS*, 964 F.2d 524, 528 (6th Cir.1992).

Because the ALJ incorporated the functional limitations—including nonexertional—identified by Lusk's treating physician, Dr. Andreas, there is substantial evidence in the record to support the ALJ's assessment of his nonexertional limitations.

### E. *Lusk's Coronary Problems*

██ Lusk next maintains that his condition meets or equals Listing 4.04, Ischemic Heart Disease, and that he is therefore disabled as a matter of law under step 3 of the inquiry outlined above. Again, this argument lacks merit.

It is Lusk's burden to prove that he has an impairment or combination of impairments listed in, or medically equal to one listed in, 20 C.F.R. Pt. 404, Subpt, P, App. 1. To do so, he must present specific medical findings that his impairment meets the applicable impairment or present medical evidence that describes how his impairment is equivalent to a listed impairment. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir.2001); *Land v. Sec'y of HHS*, 814 F.2d 241, 245 (6th Cir.1986). Substantial evidence exists to support a finding that the claimant does *not* meet the listing if there is a lack of evidence indicating the existence of all of the requirements of a listed impairment. *Hale v. Sec'y of HHS*, 816 F.2d 1078, 1083 (6th Cir.1987).

While Lusk has severe coronary artery disease, he did not cite any medical evidence that is at least equal in severity and duration to the requirements of Listing 4.04. To the contrary, several months after Lusk underwent his bypass surgery, he had a Cardiolite study, which Dr. Waltman reported showed no evidence of ongoing ischemia or symptoms from Lusk's left ventricular dysfunction. He noted that Lusk "had actually quite normal looking stress perfusion imaging" and recommended that Lusk return to work. The lack of Lusk's evidence supporting the conclusion that his symptoms were listed in, or medically equal to one listed in, Part 404, in combination with Dr. Waltman's findings, constitute substantial evidence that Lusk's condition does not meet or equal Listing 4.04.

### F. *Lusk's Reactive Depression*

██ Lusk's assertion that the ALJ did not take account of his reactive depression is inaccurate. The ALJ found that Lusk had severe "depression secondary to his coronary problems." He relied on the opinions from Drs. Waltman, Lenhoff and Andreas when determining the limitations related to this condition. Further, while Dr. Waltman found that Lusk suffered from bypass surgery reactive depression, he concluded that Lusk should return to work. Finally, while the hypotheticals

posed to the VE did not explicitly name reactive depression as a limitation, the second hypothetical did include a restriction requiring "low stress work with limited interaction with co-workers, supervisors, or the general public."[2]

### G. *Deference to the Treating Physician*

■ Lastly, Lusk maintains that the ALJ did not give the appropriate deference to the assessment of his treating physician and other medical records documenting his coronary and other impairments. He notes that the Sixth Circuit has held that uncontradicted opinions of treating physicians are entitled to complete deference.

This argument lacks merit because the ALJ incorporated the limitations found by Dr. Andreas, Lusk's treating physician, into the second hypothetical he gave the VE. Moreover, Lusk has failed to identify any finding of Dr. Andreas that the ALJ failed to take account of in determining whether Lusk is disabled. Finally, Dr. Andreas did not conclude that Lusk is disabled; rather, he opined that Lusk would be able to perform a limited range of medium work, an opinion which the ALJ noted in his findings.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

2. The VE had also read the Statement of Residual Functional Capacity completed by Dr. Andreas as well as the exhibits in Lusk's file prior to the hearing. He was therefore familiar with Lusk's diagnosis of reactive depression.